Shaffy Moeel (State Bar No. 238732)
MOEEL LAW OFFICE
shaffy@moeellaw.com
1611 Telegraph Ave, Suite 806
Oakland, California 94612
Telephone: (415) 735-5021

*Attorney for Defendant*
YENY FERNANDEZ

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 21-MJ-70172 |
| Plaintiff, | ) ) ) | DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO DETAIN |
| v. | ) ) | Hearing Date: February 19, 2021 |
| YENY FERNANDEZ, | ) ) | Time:            10:30 a.m. |
| Defendant. | ) ) ) ) | |

Defendant Ms. Fernandez, by her attorney, SHAFFY MOEEL, respectfully requests that this Court release her on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Ms. Fernandez has rebutted the presumption of detention with evidence that she has an incentive not to flee the United States because she suffered greatly when she fled her native Honduras to arrive in the United States for a more safe life for herself and her daughter, she has law-abiding and hard-working close family friend who is willing to sign a bail on her behalf and act as her custodian, despite a short period of time in which she has a history of arrests in the Tenderloin, she has no convictions for criminal activity and she does not use or abuse alcohol or drugs. In support, Ms. Fernandez states as follows:

**I.     The Statutory Presumptions of Detention Should Be Viewed with Caution Because They Lead to High Rates of Detention for Low-Risk Defendants.**

Congress enacted the statutory presumptions of detention in the Bail Reform Act of 1984 (BRA) "to detain high-risk defendants who were likely to pose a significant risk of danger to the community if they were released pending trial."[1] But the presumptions of detention have not worked as intended, and federal pretrial detention rates have skyrocketed since the BRA was enacted, rising from 19% in 1985 to 75% in 2019.[2] A recent study by the Administrative Office of the Courts (AO) attributed this "massive increase"[3] in detention rates to the presumptions of detention, especially as they are applied to low-risk defendants.[4] The statutory presumptions in drug and firearm cases

---

[1] Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 56–57 (2017), archived at https://perma.cc/9HGU-MN2B.

[2] *Pretrial Release and Detention: The Bail Reform Act of 1984*, Bureau of Just. Stat. Special Rep., at 2 (Feb. 1988), https://www.bjs.gov/content/pub/pdf/prd-bra84.pdf (Table 1) (18.8% of defendants detained pretrial in 1985); *Judicial Business: Federal Pretrial Services Tables*, Admin. Off. U.S. Courts ("AO Table"), Table H-14 (Sept. 30, 2019) https://www.uscourts.gov/sites/default/files/data_tables/jb_h14_0930.2019.pdf (74.8% of defendants detained pretrial in 2019); *see also* AO Table H-14A (Sept. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/jb_h14a_0930.2019.pdf (61% detention rate *excluding immigration cases*).

[3] Austin, *supra* note 1, at 61.

[4] *Id.* at 57.

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO DETAIN
21-MJ-70172

applied to *nearly half* of all federal cases each year.[5] The presumptions of detention have thus become "an almost de facto detention order for almost half of all federal cases."[6]

The study further found that the presumptions increase the detention rate without advancing community safety. Rather than jailing the worst of the worst, the presumptions over-incarcerate the lowest-risk offenders in the system, people who are stable, employed, educated, and have minimal to no criminal history.[7] When a low-risk individual is not facing a presumption, they're released 94% of the time.[8] Yet an identically low-risk individual in a presumption case is released just 68% of the time.[9] Recent testimony before Congress relied on this government study to call for reform: "These presumptions must be changed because they've had far-reaching and devastating consequences that were unforeseen and unintended by Congress."[10] Moreover, "[t]he BRA's legislative history demonstrates that Congress did not intend the drug presumption to apply so broadly," and only intended it to apply to "major drug traffickers," not people like Ms. Fernandez.[11]

Relying on the groundbreaking findings of the AO study, the Judicial Conference's Committee on Criminal Law recently determined "that the § 3142(e) presumption was unnecessarily

---

[5] *Id.* at 55 (the drug presumption "applied to between 42 and 45 percent of [all federal] cases every year").
[6] *Id.* at 61.
[7] *Id.* at 57.
[8] *Id.*
[9] *Id.*
[10] *See The Administration of Bail by State and Federal Courts: A Call for Reform*: *Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 115th Cong. (2019), https://judiciary.house.gov/calendar/eventsingle.aspx?EventID=2256; *Testimony of Alison Siegler* at PDF 6–7 (Nov. 14, 2019), https://docs.house.gov/meetings/JU/JU08/20191114/110194/HHRG-116-JU08-TTF-SieglerA-20191114.pdf; *see also Written Statement of Alison Siegler* at 13–17 (Nov. 14, 2019), https://docs.house.gov/meetings/JU/JU08/20191114/110194/HHRG-116-JU08-Wstate-SieglerA-20191114.pdf (calling for the complete elimination of the presumptions in drug and gun cases).
[11] Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 Ohio St. J. Crim. L. (forthcoming 2020), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3589862, PDF at 7–9 (analyzing legislative history of presumptions in detail).

increasing detention rates of low-risk defendants, particularly in drug trafficking cases."[12] To address this problem, the Judicial Conference proposed significant legislative reform that would amend the presumption of detention in drug cases "to limit its application to defendants described therein whose criminal history suggests that they are at a higher risk of failing to appear or posing a danger to the community or another person."[13] While the Judicial Conference's proposed legislation has not been enacted yet, this Court can certainly take it into account when evaluating the presumption of detention in this case. Based on the proposed legislation, commentators have urged judges to give "little, if any, weight to the drug presumption of detention at the detention hearing stage."[14]

The problems with the statutory presumptions of detention are important to Ms. Fernandez's motion because, as the AO study confirms, high federal pretrial detention rates come with significant and wide-ranging "social and economic costs."[15] For example, the study explains that "[e]very day that a defendant remains in custody, he or she may lose employment which in turn may lead to a loss of housing. These financial pressures may create a loss of community ties, and ultimately push a defendant towards relapse and/or new criminal activity."[16] Indeed, the economic harms stemming from being detained pretrial persist for years: even three to four years after their bail hearing, people released pretrial were still 24.9% more likely to be employed than those who were detained.[17]

It is unsurprising, then, that another AO study found a relationship "between the pretrial detention of low-risk defendants and an increase in their recidivism rates, both during the pretrial

---

[12] *Report of the Proceedings of the Judicial Conference of the United States* 10 (Sept.12, 2017), archived at https://perma.cc/B7RG-5J78.
[13] *Id.*
[14] Zunkel & Siegler, *supra* note 11, PDF at 4.
[15] Austin, *supra* note 1, at 61.
[16] *Id.* at 53; *see also* Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82(2) Fed. Prob. 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83 (finding that for people detained pretrial for at least three days, 76.1% had a negative job-related consequence and 37.2% had an increase in residential instability).
[17] Will Dobbie et al., *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108(2) Amer. Econ. Rev. 201, 204 (2018), archived at https://perma.cc/X77W-DAWV.

phase as well as in the years following case disposition."[18] More recent studies have confirmed that pretrial detention is criminogenic[19] and cautioned that "lower crime rates should not be tallied as a benefit of pretrial detention."[20] One reason why pretrial detention is criminogenic is because jails' physical and mental health screenings and treatment offerings are often inadequate.[21] In addition, federal "pretrial detention is itself associated with increased likelihood of a prison sentence and with increased sentence length," even after controlling for criminal history, offense severity, and socio-economic variables.[22] These stark statistics must also be considered in light of the fact that 99% of federal defendants are not rearrested for a violent crime while on pretrial release.[23] In other words, pretrial detention imposes enormous costs on criminal defendants, their loved ones, and the community, in a counterproductive attempt to prevent crimes that are extremely unlikely to happen in the first place.

There are also significant fiscal costs associated with high federal pretrial detention rates. As of 2016, the average pretrial detention period was 255 days (although several districts averaged over

---

[18] Austin, *supra* note 1, at 54 (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).

[19] Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 718 (2017), archived at https://perma.cc/5723-23AS ("[D]etention is associated with a 30% increase in new felony charges and a 20% increase in new misdemeanor charges, a finding consistent with other research suggesting that even short-term detention has criminogenic effects."); Arpit Gupta et al., *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 45 J. Legal Stud. 471, 496 (2016) ("[O]ur results suggest that the assessment of money bail yields substantial negative externalities in terms of additional crime.").

[20] Emily Leslie & Nolan G. Pope, *The Unintended Impact of Pretrial Detention on Case Outcomes: Evidence from New York City Arraignments*, 60 J.L. & Econ. 529, 555 (2017).

[21] *See* Laura M. Maruschak et al., *Medical Problems of State and Federal Prisoners and Jail Inmates*, Bureau of Just. Stat., at 9 (2015), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in prisons and jails); *see also* Faye S. Taxman et al., *Drug Treatment Services for Adult Offenders: The State of the State*, 32 J. Substance Abuse Treatment 239, 247, 249 (2007), archived at https://perma.cc/G55Z-4KQH.

[22] James C. Oleson et al., *The Sentencing Consequences of Federal Pretrial Supervision*, 63 Crime & Delinquency 313, 325 (2014), archived at https://perma.cc/QAW9-PYYV.

[23] Thomas H. Cohen et al., *Revalidating the Federal Pretrial Risk Assessment Instrument: A Research Summary*, 82(2) Fed. Prob. 23, 26 (2018), archived at https://perma.cc/8VM9-JH9T.

400 days in pretrial detention).[24] Pretrial detention costs an average of $73 per day per detainee, while pretrial supervision costs an average of just $7 per day.[25]

### II. Ms. Fernandez Should Be Released on Bond with Conditions.

This Court should follow Pretrial Services' recommendation and release Ms. Fernandez with conditions. In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). However, release is warranted here because there are numerous facts under § 3142(g) that rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Ms. Fernandez's appearance in court and the safety of the community.

As the Supreme Court held in *Salerno*, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

### III. The Presumption of Detention Can Be Easily Rebutted and, Once Rebutted, Must Be Considered Alongside All of the Evidence That Weighs in Favor of Release.

---

[24] Austin, *supra* note 1, at 53.
[25] *Id.* Thus, 255 days of pretrial detention would cost taxpayers an average of $18,615 per detainee, while pretrial supervision for the same time would cost an average of $1,785.

The law is clear that (1) very little is required for a defendant to rebut the presumption, and (2) courts must weigh the rebutted presumption against every factor that militates in favor of release before detaining a defendant. In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

### A.     Rebutting the Presumption

Very little is required for a defendant to rebut the presumption of detention. A defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707; *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did 'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707. Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Id.* (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707. As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Id.* ("Once this burden of production is met, the presumption is 'rebutted.'")

(quoting *Jessup*, 757 F.2d at 384); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home).[26] The government bears the burden of *persuasion* at all times. *Id.*; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

In *Dominguez*, for example, the Seventh Circuit determined that the defendants had sufficiently rebutted the presumption of detention by introducing fairly minimal evidence about their employment and family ties. 783 F.2d at 707. Both defendants were Cuban immigrants who were not U.S. citizens but had been in the country lawfully for five years, and neither had a criminal record. *Id.* One of the defendants was married and had family members in the United States; both were employed. *Id.* These facts alone were sufficient for the Seventh Circuit to find that defendants had rebutted the presumption. *Id.*

### B. Weighing the Rebutted Presumption

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

### C. Forbidden Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based solely on (1) evidence of past dangerousness, (2) the nature and seriousness of the crime charged, or (3) the weight of the

---

[26] To rebut the presumption of flight risk, for example, a defendant does not "have to *prove* that he would not flee—*i.e.*, he would [not] have to *persuade* the judicial officer on the point. [Instead], he would only have to introduce a certain amount of evidence contrary to the presumed fact." *Jessup*, 757 F.2d at 380–81; *accord Dominguez*, 783 F.2d at 707.

evidence against him. First, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." *Dominguez*, 783 F.2d at 707. Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community. *Id*. Second, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id.* at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g). Third, the Court is forbidden from relying solely on the weight of the evidence to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id.*

**IV.     The Presumption of Detention Is Rebutted in This Case.**

As detailed below, there is more than "some evidence that Ms. Fernandez will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707. Accordingly, the presumption is rebutted in this case. Ms. Fernandez is the single mother to a 5 year old girl. Ms. Fernandez fled Honduras for the United States a little over one year ago. She left her native country under conditions of great personal anguish and at great risk to the well-being of herself and her daughter. To be sure, undersigned counsel will learn more about Ms. Fernandez's personal life experience throughout the pendency of this case. But she took risks associated with fleeing her native country because those risks outweighed the danger to her and her child of remaining.

Before her arrest, Ms. Fernandez lived with her fiancé, Mario, her daughter, her daughter's paternal uncle and his wife in Oakland, California.  If released on bail, Ms. Fernandez plans to live with her proposed surety, Yanory Montes Martinez in Vallejo. Ms. Montes Martinez has two jobs. She is a retail clerk for a clothing shop. She also works as a driver for the grocery delivery company

Good Eggs. Despite the arrest conduct alleged by the government in their brief, before her arrest in this case, Ms. Fernandez had no prior convictions. In terms of employment, given her immigration status, Ms. Fernandez was working making and selling Honduran food on the street. She does not have a history of drug or alcohol abuse or, to counsel's knowledge, a history of nonappearance.

The foregoing facts definitively rebut the presumption of detention in this case.

### V.     Regardless of the Presumption, Ms. Fernandez Must Be Released Because There are Conditions That Will Reasonably Assure Appearance and Safety.

Regardless of whether this Court finds that the presumption of detention is rebutted, Ms. Fernandez must be released because there are conditions that will reasonably assure the safety of the community and Ms. Fernandez's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions '*will* reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *Dominguez*, 783 F.2d at 707 (quoting § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Ms. Fernandez's appearance in court. Thus, Ms. Fernandez cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Ms. Fernandez's appearance in court and the safety of the community.

- Place Ms. Fernandez in custody of third-party custodian, Yanory Montes Martinez "who agrees to assume supervision and to report any violation of a release condition to the court" [§ 3142(c)(1)(B)(i)]. Ms. Montes Martinez is Ms. Fernandez's godmother and very close family friend.
- Maintain or actively seek employment [(ii)]
- Maintain or commence an educational program [(iii)]
- Follow restrictions on "personal associations, place of abode, or travel" [(iv)] such as electronic monitoring, GPS monitoring, home detention, or home incarceration.
- Refrain from "excessive use of alcohol" [(ix)]

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO DETAIN
21-MJ-70172

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription" [(ix)]
- Undergo "medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency" [(x)] Ms. Fernandez would benefit from mental health counseling given her history of trauma.

Because there are conditions of release that will reasonably assure Ms. Fernandez's appearance in court and the safety of the community, she should be released.

**VI.   Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that the Foregoing Conditions of Release Will Reasonably Assure Appearance and Safety.**

It is not necessary to detain Ms. Fernandez to meet the primary goals of the BRA, which are to reasonably assure appearance in court and community safety. In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[27]

Moreover, when release rates increase, crime and flight do not. A near-perfect compliance rate on bond is seen equally in federal districts with very high release rates and those with very low release rates.[28] Even in districts that release two-thirds of all federal defendants on bond, fewer

---

[27] App. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H  (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[28] The data showing near-perfect compliance on bond is illustrated in the chart, "Federal Ms. Fernandezs on Bond Rarely Flee or Recidivate." The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* App. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using App 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 26.00%) have an average failure-to-appear rate of 1.37%, while the ten districts with the highest release rates (average 65.58%) have an *even lower* failure-to-appear rate of 0.87%. *See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 1.19%, while the ten districts with the highest release rates have an average rearrest rate of 2.29%. *See* App. 1; App. 2. The districts with the lowest release rates are, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* App. 2.

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO DETAIN
21-MJ-70172

than 1% fail to appear in court and 2% are rearrested while released.[29] The below chart reflects this data:



The bond statistics for this district likewise strongly suggest that Ms. Fernandez should be released. In this district, released federal defendants appeared for court 99.09% of the time in 2019, and zero defendants were rearrested on release. *See* App. 1, AO Table H-15. Yet despite the statistically low risk of flight and recidivism that defendants like Ms. Fernandez pose, the government recommends detention in 77% of cases nationwide and in 65% of cases in this district. *See* App. 3, AO Table H-3[30]. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Ms. Fernandez must be released because the government has not established that she would be among the less than 1% of defendants who fail to appear in court or that she would be the **one person** in the district who would be rearrested on bond. Detaining Ms. Fernandez without such evidence violates their constitutionally protected liberty interest.

**VII. Conclusion**

For these reasons, Ms. Fernandez respectfully requests that this Court find that the

---

[29] *See* App. 1; App. 2.
[30] https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2019.pdf

presumption has been rebutted and release her with conditions.

Dated: February 18, 2021              Respectfully submitted,

                                      /s/ _____

                                      Shaffy Moeel

                                      Attorney for Ms. Fernandez

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO DETAIN
21-MJ-70172